UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT ADAMS, III,

                      Plaintiff,
                                                          9:16-CV-0527
v.                                                        (GTS/ATB)

DAVID O'HARA, Corr. Officer, Auburn Corr. Fac.;
K. KIRKWOOD, Corr. Officer, Auburn Corr. Fac.;
C. CURTIS, Corr. Officer, Auburn Corr. Fac.;
L. SEERY, Corr. Officer, Auburn Corr. Fac.;
P. DILALLO, Corr. Officer, Auburn Corr. Fac.; and
S. WALSHVELO, Corr. Serg., Auburn Corr. Fac.,
a/k/a S. Walshevo,

                      Defendants.
_____

APPEARANCES:                                             OF COUNSEL:

BLITMAN & KING LLP                                       NOLAN J. LAFLER, ESQ.
  Pro Bono Counsel for Plaintiff
443 North Franklin Street
Franklin Center, Suite 300
Syracuse, NY 13204-1415

HON. LETITIA A. JAMES                                    DENISE P. BUCKLEY, ESQ.
Attorney General for the State of New York               KONSTANDINOS D. LERIS, ESQ.
  Counsel for Defendants                                 Assistants Attorney General
The Capitol
Albany, NY 12224

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

The trial in this prisoner civil rights action, filed *pro se* by Robert Adams, III ("Plaintiff") pursuant to 42 U.S.C. § 1983, began with an evidentiary hearing before the undersigned on February 12, 2019, regarding the affirmative defense of the six above-captioned correctional employees ("Defendants") that Plaintiff failed to exhaust his available administrative remedies, before filing this action on May 4, 2016, as required by the Prison Litigation Reform Act. At the hearing, documentary evidence was admitted, and testimony was taken of Plaintiff as well as Defendants' three witness (Auburn Correctional Facility Lieutenant Timothy C. Abate, Auburn Correctional Facility Inmate Grievance Program Supervisor Cheryl Parmiter, and New York State Department of Corrections and Community Supervisor Inmate Grievance Program Assistant Director Rachael Seguin), whom Plaintiff was able to cross-examine through *pro bono* trial counsel. At the conclusion of the hearing, the Court indicated that a written decision would follow. This is that written decision. For the reasons stated below, Plaintiff's Second Amended Complaint is dismissed because of his failure to exhaust his available administrative remedies before filing this action.

## I.     RELEVANT LEGAL STANDARD

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e.

The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In this regard, exhaustion serves two main purposes. First, it protects "administrative agency authority" by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b) "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Woodford*, 548 U.S. at 89. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

In accordance with the PLRA, the New York State Department of Corrections and Community Supervision ("DOCCS") has made available a well-established inmate grievance program. 7 N.Y.C.R.R. § 701.7. Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following three-step procedure for the filing of grievances. 7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7.[1]

---

[1] *See also Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *1 & n.1 (N.D.N.Y. March 31, 2010) [citation omitted].

First, an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence.[2]  If a grievance complaint form is not readily available, a complaint may be submitted on plain paper.  A representative of the facility's inmate grievance resolution committee ("IGRC") has a certain number of days from receipt of the grievance to informally resolve the issue.  If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt of the grievance, and issues a written decision within a certain number of days of the conclusion of the hearing.

Second, a grievant may appeal the IGRC decision to the facility's superintendent within a certain number of days of receipt of the IGRC's written decision.  The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal.

Third, a grievant may appeal to the central office review committee ("CORC") within a certain number of days of receipt of the superintendent's written decision.  CORC is to render a written decision within a certain number of days of receipt of the appeal.

Moreover, there is an expedited process for the review of complaints of inmate harassment or other misconduct by correction officers or prison employees.  7 N.Y.C.R.R. § 701.8.  In the event the inmate seeks expedited review, he or she may report the misconduct to the employee's supervisor.  The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the superintendent for review.  Under the regulations, the superintendent

---

[2]     The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint in one of three ways: "in-house," by the New York State Office of the Inspector General, or by the New York State Police's Bureau of Criminal Investigation. An appeal of the adverse decision of the superintendent may be taken to the CORC as in the regular grievance procedure. A similar special procedure is provided for claims of discrimination against an inmate. 7 N.Y.C.R.R. § 701.9.

These procedural requirements contain several safeguards. For example, if an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she could apply to the facility's IGP Supervisor for an exception to the time limit based on mitigating circumstances. If that application was denied, the inmate could file a complaint complaining that the application was wrongfully denied.[3] Moreover, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can–and must–be appealed to the next level, including CORC, to complete the grievance process.[4]

It is important to note that, where an inmate does not know that an unprocessed grievance (i.e., a grievance that has not been assigned a grievance number) may technically be appealed, he need not appeal that unprocessed grievance, because the regulatory scheme advising him of that

---

[3]      *See Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *2 & n.3 (N.D.N.Y. March 31, 2010) (citing *Groves v. Knight*, 05-CV-0183, Decision and Order at 3 [N.D.N.Y. filed Aug. 4, 2009], an appeal from which was subsequently dismissed as frivolous, *see Groves v. Knight*, No. 09-3641, Mandate [2d Cir. filed Jan. 15, 2010].)

[4]      7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *see also Murray,* 2010 WL 1235591, at *2 & n.4 [collecting cases]; *cf.* 7 N.Y.C.R.R. § 701.8(g) ("If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC.").

right is too opaque. *See Williams v. Corr. Officer Priatno*, 829 F.3d 118, 126 (2d Cir. 2016)

(finding that, "even if Williams technically could have appealed his [unprocesseed] grievance,

we conclude that the regulatory scheme providing for that appeal is 'so opaque' and 'so

confusing that . . . no reasonable prisoner can use [it pursuant to *Ross v. Blake*, 136 S. Ct. 1850

(2016)]").

It is also important to note that DOCCS has a *separate and distinct* administrative appeal

process for inmate misbehavior hearings:

A.     For Tier III superintendent hearings, the appeal is to the Commissioner's

       designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate

       Disciplinary Program, pursuant to 8 N.Y.C.R.R. § 254.8;

B.     For Tier II disciplinary hearings, the appeal is to the facility superintendent

       pursuant to 7 N.Y.C.R.R. § 253.8; and

C.     For Tier I violation hearings, the appeal is to the facility superintendent or a

       designee pursuant to 7 N.Y.C.R.R. § 252.6.

"An individual decision or disposition of any current or subsequent program or procedure having

a written appeal mechanism which extends review to outside the facility shall be considered non-

grievable." 7 N.Y.C.R.R. § 701.3(e)(1). Similarly, "an individual decision or disposition

resulting from a disciplinary proceeding . . . is not grievable." 7 N.Y.C.R.R. § 701.3(e)(2).

However, "[t]he policies, rules, and procedures of any program or procedure, including those

above, are grievable." 7 N.Y.C.R.R. § 701.3(e)(3); *see also* N.Y. Dep't Corr. Serv. Directive

No. 4040 at III.E.

Generally, if a prisoner has failed to properly follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies, and his claims are subject to dismissal. *Woodford*, 548 U.S. at 93; *Porter*, 534 U.S. at 524; *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006). However, a plaintiff's failure to exhaust does not end the inquiry. This is because certain exceptions exist to the exhaustion requirement.

In particularly, in 2004, in *Hemphill v. State of New York*, the Second Circuit held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004), *accord*, *Ruggiero*, 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* [citations and internal quotations omitted].

However, in 2016, in *Ross v. Blake*, the Supreme Court abrogated *Hemphill*'s third prong and effectively enveloped its second prong within its first prong. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). More specifically, under *Ross*, any inquiry that previously would have been considered under the second or third prongs of *Hemphill* is now considered entirely within the context of whether administrative remedies were actually available to the aggrieved inmate. *Ross*, 136 S. Ct. at 1858. This is because, the Supreme Court explained, the PLRA "contains its own, textual exception to mandatory exhaustion." *Id*. In particular, 42 U.S.C. § 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. *Id*. In the PLRA context, the Supreme Court determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. at 1859 (quotation marks omitted).

To guide courts in this new analysis, the Supreme Court has identified three kinds of circumstances in which an administrative remedy, "although officially on the books," is not "available." *Ross*, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Third, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

Finally, two additional points bear mentioning regarding exhaustion hearings. First, the Second Circuit has ruled that a plaintiff in a lawsuit governed by PLRA is not entitled to a jury

trial on disputed factual issues relating to his exhaustion of administrative remedies; rather, PLRA exhaustion is a matter of judicial administration. *Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011). Second, given that non-exhaustion is an affirmative defense, the defendant bears the burden of providing that a prisoner has failed to exhaust his available administrative remedies.[5] However, once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then "counter" the defendant's assertion by persuading the Court of either exhaustion or unavailability.[6] As a result, practically speaking, while the burden of proving this affirmative defense remains at all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it.

## II.   ANALYSIS

According to Plaintiff, he made three attempts to exhaust his available administrative remedies regarding the claims at issue in this action: (1) he filed a grievance at Auburn Correctional Facility ("Auburn C.F."); (2) he sent a letter of complaint to the New York State Office of the Inspector General ("Inspector General"); and (3) he filed a grievance at Southport Correctional Facility ("Southport C.F."). (Hrg. Tr.)[7]

---

[5]     *Id.* at *4 [citation omitted].

[6]     *Id.* at *4 & n.17 [citing cases]; *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (noting that special circumstances must be "plausibly alleged, . . . justify[ing] the prisoner's failure to comply with administrative procedural requirements"); *Grant v. Kopp*, 17-CV-1224, 2019 WL 368378, at *4 (N.D.N.Y. Jan. 3, 2019) (Peebles, M.J.) ("I conclude that although the burden of proof on this affirmative defense remains with the defendant at all times, the plaintiff can be required to produce evidence in order to defeat it.") (citing cases), *adopted*, 2019 WL 367302 (N.D.N.Y. Jan. 30, 2019) (Sharpe, J.).

[7]     The Court notes that Defendants' Answers timely asserted this affirmative defense. (Dkt. No. 101, at ¶ 18 [Defs.' Answer]; Dkt. No. 102, at ¶ 17 [Def. Walshvelo's Answer].)

## A. Plaintiff's First Attempt: Filing a Grievance at Auburn C.F.

The Court begins by finding that, if a correctional sergeant ripped up Plaintiff's grievance in front of him and threatened him not to further pursue the grievance as Plaintiff testified, sufficient grounds would exist to deem his administrative remedies to have been effectively rendered unavailable (despite his having continued to complain through avenues other than the grievance process at Auburn C.F.). This is because the unavailability inquiry is an objective one,[8] which survives the Supreme Court's decision in *Ross*.[9]

However, after carefully considering the matter, the Court finds that Plaintiff has failed to offer any credible evidence that, while he was at Auburn C.F. between January 20 and January 22, 2015, he submitted a grievance that a correctional employee either ripped up or threatened him not to continue to pursue. (*See generally* Hrg. Tr.) In finding that Plaintiff's hearing testimony lacks credibility, the Court relies on the following eight facts: (1) Plaintiff's unconvincing demeanor and body language (including, but not limited to, his demeanor, tone of

---

[8]      *See Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004) ("The test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available. . . . Moreover, it should be pointed out that threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts.").

[9]      *See, e.g., Davis v. Doe,* 16-CV-0994, 2017 WL 8640829, at *4 (N.D.N.Y. Dec. 29, 2017) (Stewart, M.J.) (continuing to apply objective test after *Ross*), *adopted*, 2018 WL 1582230 (N.D.N.Y. March 27, 2018) (D'Agostino, J.); *accord, Allen v. Graham*, 16-CV-0047, 2017 WL 9511168, at *6 (N.D.N.Y. Sept. 26, 2017) (Baxter, M.J.), *adopted*, 2017 WL 5957742 (N.D.N.Y. Dec. 1, 2017) (Suddaby, C.J.); *White v. Dishaw*, 14-CV-0002, 2017 WL 4325770, at *3 (N.D.N.Y. June 20, 2017) (Stewart, M.J.), *adopted*, 2017 WL 4326074 (N.D.N.Y. Sept. 27, 2017) (Sharpe, J.); *Cole v. N.Y.S. Dep't of Corr. and Cmty. Supervision*, 14-CV-0539, 2016 WL 5394752, at *10 (N.D.N.Y. Aug. 25, 2016) (Peebles, M.J.), *adopted*, 2016 WL 5374125 (N.D.N.Y. Sept. 26, 2016) (Sannes, J.).

voice, facial expressions, and eye contact or lack thereof) during his testimony;[10] (2) the fact that Plaintiff contradicted himself by initially testifying at the hearing that he did not "actually observe" (but only "heard") the correction officer who picked up his grievance and then later testifying that he *did* see, and indeed made eye contact with, that correction officer (which is consistent with his prior deposition testimony);[11] (3) the inconsistency between Plaintiff's testimony that he had "[a]t least twice" filed grievances at Auburn C.F. "on the standard form for inmate grievances" (other than the grievance he purportedly submitted regarding the events of this litigation) and the unchallenged hearing testimony of IGP Supervisor Parmiter that Plaintiff *never* filed a grievance at Auburn C.F. (as well as Plaintiff's apparent stipulation that he never filed a grievance at Auburn C.F.);[12] (4) the inconsistency between Plaintiff's hearing testimony that an unidentified sergeant ripped up his first grievance about the assault (which stopped Plaintiff from filing another grievance at Auburn C.F.) and Plaintiff's assertion (in his letter of June 1, 2015) that the interception of his grievance about the assault occurred "on two separate occasions, by S.H.U. Supervisors";[13] (5) the inconsistency between Plaintiff's hearing testimony

---

[10]    *Cf. Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 634 (2d Cir.1996) ("[W]e must accord great deference to the trial court's findings regarding credibility because the trial judge is in the best position to evaluate a witness's demeanor and tone of voice as well as other mannerisms that bear heavily on one's belief in what the witness says.").

[11]     (*Compare* Hrg. Tr. at 10, 21 [Plf.'s Hrg. Testimony] *with* Hrg. Tr. at 10, 22-23, 31-32 [Plf.'s Hrg. Testimony] *and* Hrg. Ex. D-5, at 127 [Plf.'s Depo. Tr.].)

[12]    (*Compare* Hrg. Tr. at 7-8 [Plf.'s Hrg. Testimony] *with* Hrg. Tr. at 55 [Parmiter Hrg. Testimony] *and* Hrg. Tr. at 4 [Tr. of Parties' Stipulations, in which Plaintiff's counsel stated, "We also understood that there was going to be testimony from the defense that the internal grievance files at Auburn were searched and that no record of a grievance from the plaintiff was located. We can stipulate to that issue as well."].)

[13]    (*Compare* Hrg. Tr. at 6-7, 24, 33 [Plf.'s Hrg. Testimony] *with* Hrg. Ex. P-2 [Plf.'s Letter to Southport C.F. IGP Supervisor dated June 1, 2015].)

that complaining about the individual who had threatened him would have been like "throwing a ball in the dark" because Plaintiff "wasn't able to identify [him]"[14] and the fact that Plaintiff knew the individual's (a) rank ("sergeant"), (b) hair color ("brown"), (c) approximate height ("5-10 to 6 foot"), (d) approximate weight ("two [hundred pounds] and some change, 220"), and most importantly (e) his *job assignment* (as the admitted supervisor of the correction officers who had allegedly assaulted Plaintiff);[15] (6) the fact that it is difficult to believe that Plaintiff would not have even *tried* to avail himself of the opportunity to place his sealed grievance directly through a slot into the locked mailbag (beyond the reach of correctional employees until it reaches the grievance office), given his belief that "keep[ing] everything inside quiet, on the hush" is "what they do up there [in S.H.U.] . . . they want total control";[16] (7) the fact that it is difficult to believe that a correctional sergeant would take off his name tag (which in itself would subject him to discipline) and then stand before an inmate's cell in SHU and tear up the inmate's grievance, knowing that the act would be captured on video and that the video would be retained for a period of two weeks (and even longer if the inmate complained of the incident, in which

---

[14]     (Hrg. Tr. at 32 [Plf.'s Hrg. Testimony].)

[15]     (Hrg. Tr. at 11-14 [Plf.'s Hrg. Testimony, stating, *inter alia*, that the sergeant referred to the offending corrections officers as "my officers"]; Dkt. No. 138, Attach. 4, at ¶ 3 [Plf.'s Sworn Statement, identifying the individual as "the SHU Block Sgt." and stating that he referred to the offending correction officers as "my officers"]; Dkt. No. 138, Attach. 3, at ¶ 18 [Plf.'s Sworn Statement, identifying the individual as "the SHU Block Sgt."].)

[16]     (Hrg. Tr. at 41-44, 38, 50 [Abate's Hrg. Testimony]; Hrg. Tr. at 33 [Plf.'s Hrg. Testimony].) The Court notes that, despite Lieutenant Abate's (somewhat vague) indication that a prisoner had to "hand[] [his grievance] to an officer," a fair reading of Lieutenant Abate's hearing testimony leads the Court to believe that, had he wanted to, Plaintiff could have "directly place[d]" his grievance "into the mailbag." (Hrg. Tr. at 42, 44, 50 [Abate's Hrg. Testimony].)

case the video would be saved to a DVD);[17] and (8) the fact that it is difficult to believe that

Plaintiff would write to the Inspector General on January 22, 2015, complaining about the

intimidation he experienced two days before by Correction Officer "K. Deford" (who

purportedly banged on Plaintiff's cell in the Mental Health Unit and stated, *inter alia*, "There's

more where that came from. We're not finished w[ith] you yet") without mentioning that a

sergeant purportedly ripped up Plaintiff's grievance earlier in the day on January 22.[18]

### B.     Plaintiff's Second Attempt: Sending a Letter of Complaint Directly to the Inspector General

Setting aside (for the sake of brevity) the fact that Plaintiff never obtained a referral from

the superintendent before complaining to the Inspector General, no record evidence exists either

that Plaintiff received a finding of substantiation by the Inspector General or that he appealed to

CORC any finding of unsubstantiation by the Inspector General. (Hrg. Tr. at 15-17, 24-27, 29,

32-35 [Plf.'s Hrg. Testimony]; Hrg. Tr. at 58 [Seguin's Hrg. Testimony]; Hrg. Ex. D-1 [Record

of Plf.'s Appeals to CORC]; D-5, at 129-32 [Plf.'s Depo. Tr.]; Hrg. Ex. P-1 [Plf.'s Letter to IG

dated Jan. 22, 2015]; Dkt. No. 89, at ¶¶ 147-49 [Plf.'s Verified Second Am. Compl.].)

As this Court has previously explained, "There is no exhaustion where an inmate

complains directly to the Inspector General (i.e., instead of complaining to the superintendent

and having the complaint referred to the Inspector General pursuant to 7 N.Y.C.R.R. § 701.8[d]),

the Inspector General renders a finding of unsubstantiation, and the inmate fails to appeal that

finding to CORC." *Smith v. Kelly*, 985 F. Supp.2d 275, 285 (N.D.N.Y. 2013) (Suddaby, J.)

---

[17]     (Hrg. Tr. at 11-14, 32 [Plf.'s Hrg. Testimony]; Hrg. Tr. at 39-41, 45-47 [Abate's Hrg. Testimony].)

[18]     (Hrg. Tr. at 28-31, 33-34 [Plf.'s Hrg. Testimony]; Hrg. Ex. P-1, at 7 [attaching page "5" of Plf.'s Letter to IG dated Jan. 22, 2015].)

(collecting cases), *accord, McPherson v. Rogers*, 12-CV-0766, 2014 WL 675830, at \*7 (N.D.N.Y. Feb. 21, 2014) (report-recommendation of Peebles, M.J., adopted by Hurd, J.).

This is especially true after the Supreme Court's June 6, 2016, decision in *Ross. See, e.g., Kearney v. Gebo*, 15-CV-0253, 2017 WL 61951, at \*6 (N.D.N.Y. Jan. 4, 2017) ("As discussed above, however, the Supreme Court recently rejected the Second Circuit's 'special circumstances' exception to the PLRA's exhaustion requirement. Therefore, Plaintiff's complaint to the Inspector General, which does not constitute complete and proper exhaustion under New York's grievance scheme, cannot excuse his failure to exhaust."), *aff'd*, 713 F. App'x 39 (2d Cir. 2017) ("Kearney's pursuit of alternative relief from the Inspector General's Office and Commission of Correction did not render the ordinary inmate grievance procedures unavailable to him, such that he is excused from complying with those ordinary procedures. Their pendency did not preclude him from filing a grievance. Nor do any assurances Kearney received that these offices were considering his complaint warrant a finding that prison administrators thwarted Kearney from pursuing the ordinary grievance procedures through machination, misrepresentation, or intimidation.") (internal quotation marks omitted).

Analyzed through the framework set forth by *Ross*, here, the pending nature of the Inspector General's investigation in no way precluded Plaintiff from filing a grievance. *See Kearney v. Gebo*, 713 F. App'x 39, 42 (2d Cir. 2017) ("[The pendency of] Kearney's pursuit of alternative relief from the Inspector General's Office and Commission of Correction . . . did not preclude him from filing a grievance."). Nor did any assurance that Plaintiff received that the Inspector General was considering his complaint warrant a finding that prison administrators thwarted Plaintiff from pursuing the ordinary grievance procedures "through machination,

misrepresentation, or intimidation." *See Kearney*, 713 F. App'x at 42 ("Nor do any assurances Kearney received that these offices were considering his complaint warrant a finding that prison administrators thwarted Kearney from pursuing the ordinary grievance procedures through machination, misrepresentation, or intimidation.") (internal quotation marks omitted).  To the contrary, Plaintiff swears that, after interviewing Plaintiff for an hour, the Inspector General's investigator instructed Plaintiff to contact the Inspector General if he experienced further issues or retaliation.  (Hrg. Tr. at 15-17, 24-27, 29, 32-35 [Plf.'s Hrg. Testimony]; Dkt. No. 89, at ¶¶ 147-49 [Plf.'s Verified Second Am. Compl.].)

### C.     Plaintiff's Third Attempt: Filing a Grievance at Southport C.F.

The grievance that Plaintiff filed at Southport C.F. was rejected as untimely, and there was no subsequent finding of mitigating circumstances to excuse that untimeliness.  (Hrg. Tr. at 19-20 [Plf.'s Hrg. Testimony]; Hrg. Ex. D-5, at 138-39 [Plf.'s Depo. Tr.]; Hrg. Ex. P-2 [Plf.'s Letter to Southport C.F. IGP Supervisor dated June 1, 2015]; Hrg. Ex. P-3 [Southport C.F. IGP Supervisor's Letter to Plf. dated June 2, 2015]; Hrg. Ex. D-1 [Record of Plf.'s Appeals to CORC].)

Filing an untimely grievance without subsequently obtaining a finding of mitigating circumstances is insufficient to exhaust one's available administrative remedies. *See Cole v. Miraflor*, 02-CV-9981, 2006 WL 457817, at *5 (S.D.N.Y. Feb. 23, 2006) ("Contrary to Cole's claim that administrative remedies were no longer available to him because DOCS did not find mitigating circumstances to excuse his late grievance, . . . the very fact that DOCS' policies provide for the filing of late grievances where there are mitigating circumstances, demonstrates that administrative remedies were available to Plaintiff."), *aff'd*, 305 F. App'x 781 (2d Cir.

2009); *Galberth v. Durkin*, 14-CV-0115, 2016 WL 11480153, at *7 (N.D.N.Y. Apr. 21, 2016) (Baxter, M.J.) ("An inmate has not exhausted his administrative remedies when he has requested permission to file an untimely appeal and been denied by CORC due to an unpersuasive showing of mitigating circumstances."), *adopted*, 2016 WL 3910270 (N.D.N.Y. July 14, 2016) (Sannes, J.); *Burns v. Zwillinger*, 02-CV-5802, 2005 WL 323744, at *3 (S.D.N.Y. Feb. 9, 2005) ("Since [plaintiff] failed to present mitigating circumstances for his untimely appeal to the IGP Superintendent, the CORC, or this Court, [defendant's] motion to dismiss on the grounds that [plaintiff] failed to timely exhaust his administrative remedies is granted."); *Soto v. Belcher*, 339 F.Supp.2d 592, 595 (S.D.N.Y.2004) ("Without mitigating circumstances, courts consistently have found that CORC's dismissal of a grievance appeal as untimely constitutes failure to exhaust available administrative remedies.") (collecting cases).

As explained by the Court,

> If exhaustion were permissible under such circumstances, every inmate could exhaust his available administrative remedies without fulfilling the functions of the exhaustion requirement: affording corrections officials the time and opportunity to quickly and economically correct its own mistakes internally, and producing a useful record for litigation, before allowing the initiation of a federal case.

*Smith v. Kelly*, 985 F. Supp.2d 275, 290-91 (N.D.N.Y. 2013) (Suddaby, J.); *see also Murray v. Palmer*, 03-CV-1010, 2008 WL 2522324, at *19 (N.D.N.Y. June 20, 2008) (report-recommendation of Lowe, M.J., adopted by Hurd, J.) ("If the rule were to the contrary, then, as a practical matter, no prisoner could ever be said to have failed to exhaust his administrative remedies because, immediately before filing suit in federal court, he could perfunctorily write to CORC asking for permission to file an untimely appeal, and whatever the answer, he could claim to have completed the exhaustion requirement.").

**D.      Conclusion**

None of Plaintiff's three attempts to exhaust his available administrative remedies was sufficient under the PLRA, *Ross* and *Hemphill*.  As for Plaintiff's first attempt (on which he appeared to rely most strongly at the hearing), simply stated, the Court agrees with Defendants that, after Plaintiff learned that his hasty complaint directly to the Inspector General had not been substantiated, and after he learned that he would not be able to file a timely grievance at Southport C.F., he fabricated the story that his grievance had been destroyed and he had been threatened while at Auburn C.F.  (Hrg. Tr. at 31.)  The Court is not convinced by Plaintiff's contradictory and incredible hearing testimony.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 89) is **DISMISSED in its entirety with prejudice**[19] for failure to exhaust his available administrative remedies before filing this action, pursuant to the PLRA; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment for Defendants and close the file in this action.

Dated:      February 15, 2019
            Syracuse, NY

                                    Hon. Glenn T. Suddaby
                                    Chief U.S. District Judge

---

[19]      The Court notes that this dismissal is with prejudice because "it is not possible for Plaintiff to obtain a waiver to file a late appeal to CORC."  *Nickelson v. Annucci*, 15-CV-0227, 2019 WL 396003, at *1 & n.2 (N.D.N.Y. Jan. 31, 2019) (Suddaby, J.) (citing 7 N.Y.C.R.R. § 701.6[g] [2007] and *Murray v. Goord*, 03-CV-1010, 2008 WL 2522324, at *19 [N.D.N.Y. June 20, 2008]); *see also Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2003) ("[T]he broader dictum that dismissal for failure to exhaust 'should' be without prejudice would extend too far if applied to cases where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust."); *McCoy v. Goord*, 255 F. Supp.2d 233, 252 (S.D.N.Y. 2003) ("[W]here a plaintiff is effectively barred from administrative exhaustion–such as when the time for administrative exhaustion has expired and the inmate has been denied a waiver to file a late grievance–courts have not hesitated to dismiss with prejudice.").